1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SHAVOUGUE A. MASON,                         No.  2:14-cv-1041 MCE AC P

12                   Plaintiff,

13           v.                                    FINDINGS & RECOMMENDATIONS

14    M.L. MARTINEZ et al.,

15                   Defendants.

16

17           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.  Currently before the court are plaintiff's motion for summary judgment (ECF No.

19    56) and defendants' motion for summary judgment (ECF No. 57).

20    I.     Procedural History

21           Plaintiff's complaint in this case was filed by the Clerk of the Court on April 28, 2014.

22    ECF No. 1.  Upon screening, the complaint was found to state claims against defendants M.

23    Martinez, V. Martinez, Major, Lozano, Matteson, and Kyte.  ECF No. 8.  The claims against

24    defendants Lee, Runnels, and Good were dismissed and plaintiff was given the option to either

25    proceed against the remaining defendants or amend the complaint.  Id.  Plaintiff opted to proceed

26    without amending the complaint.  ECF No. 11.  Defendants M. Martinez, V. Martinez, Major,

27    Lozano, Matteson, and Kyte answered (ECF No. 18) and filed a motion for partial summary

28    judgment, prior to the close of discovery, based on plaintiff's alleged failure to exhaust his

                                                    1

administrative remedies (ECF No. 22).  The undersigned recommended that the defendants'

motion for summary judgment as to the claims against defendant V. Martinez be granted, the

motion be denied as to all other claims, and that the case proceed on the claims against defendants

M. Martinez, Major, Lozano, Matteson, and Kyte.[1]  ECF No. 42 at 9, 11.  The United States

District Judge assigned to the case adopted the findings and recommendations in full.  ECF No.

50.  The parties were then given an opportunity to file merits-based motions for summary

judgment and their fully briefed cross-motions are now pending before the court.

II.     Plaintiff's Allegations

Plaintiff states that on September 22, 2013, he was walking to the chapel when he was

called out of line by defendant Martinez for a routine body search.  ECF No. 1 at 3.  Plaintiff

complied with Martinez's orders to spread his legs and then Martinez kicked plaintiff in the right

ankle, constituting excessive force in violation of the Eighth Amendment.  Id.  Plaintiff asserts

that the kick almost made him fall, but he was able to catch himself.  Id.  After returning to his

cell, plaintiff began to feel pain in his right ankle and requested medical attention.  Id. at 3-4.

Plaintiff also filed a staff complaint against defendant Martinez for kicking him in the ankle.  Id.

at 4.  Three days after the incident, plaintiff was placed in administrative segregation and the next

day he was notified that his placement was a result of the staff complaint.  Id.  The order to place

him in administrative segregation was signed by defendant Major.  Id.  Plaintiff asserts that he

was placed in administrative segregation in retaliation for filing the complaint against Martinez.

Id.  Plaintiff subsequently filed a grievance challenging his placement in administrative

segregation.  Id. at 5.

On November 5, 2013, plaintiff was notified that Martinez had submitted a general chrono

expressing safety concerns about plaintiff returning to the general population, and he was

therefore being retained in administrative segregation.  Id.  Plaintiff was later notified that he was

being transferred to another institution.  Id.  Plaintiff asserts that defendants Major, Matteson,

---

[1]  The claims against V. Martinez having previously been dismissed as unexhausted, all
subsequent references to "Martinez" refer to presently moving defendant M. Martinez.

2

Lozano, and Kyte retained him in administrative segregation in retaliation for filing grievances and subsequently transferred him to another institution in order to cover up the excessive force used by Martinez during plaintiff's body search and to deter plaintiff from filing further grievances.  Id. at 5-6.  Plaintiff asserts that defendants' conduct constituted retaliation in violation of his First Amendment rights.  Id.

III.     Motions for Summary Judgment

        A.  Plaintiff's Arguments

        It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4 (citation omitted).

        The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety.  However, only those assertions in the motion and opposition which have evidentiary support in the record will be considered.

        Plaintiff moves for summary judgment and opposes defendants' cross-motion on the grounds that (1) defendant M. Martinez violated plaintiff's rights under the Eighth Amendment by using excessive force, and (2) defendants Major, Lozano, Matteson, and Kyte violated

plaintiff's First Amendment rights by placing and retaining him in administrative segregation and transferring him to another institution in retaliation for filing grievances. ECF No. 56 at 1, 4-7; ECF No. 60 at 6-14. He further argues that defendants are not entitled to qualified immunity. Id. at 14-19.

B. Defendants' Arguments

Defendants move for summary judgment on the grounds that (1) Martinez did not violate plaintiff's Eighth Amendment rights because her use of force was not excessive, (2) Major, Lozano, Matteson, and Kyte did not violate plaintiff's First Amendment rights because plaintiff was placed in administrative segregation for legitimate penological reasons, and alternatively, (3) that all defendants are entitled to qualified immunity. ECF No. 57-1. They oppose plaintiff's motion for summary judgment on the ground that he has not met his burden. ECF No. 58 at 2-4.

IV.   Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

4

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is

some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

U.S. at 289).

On May 27, 2016, defendants served plaintiff with notice of the requirements for opposing

a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 57-2; see

Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960

(9th Cir. 1998) (en banc) (movant may provide notice).

V.      Undisputed Material Facts

The following material facts are undisputed except as noted.

At the time relevant to the complaint, plaintiff was an inmate in the custody of the

California Department of Corrections and Rehabilitation (CDCR) at the California State Prison

(CSP)-Solano.  Defendant's Statement of Undisputed Facts (DSUF) (ECF No. 57-3) ¶ 1;

Plaintiff's Statement of Undisputed Facts (PSUF)[2] ¶ 1.  During this time, defendants Martinez,

Major, Lozano, Matteson, and Kyte were employed as at CSP-Solano.  ECF No. 21 at 1; ECF No.

57-3 at 13 (Martinez Decl.) ¶ 1; ECF No. 57-3 at 21 (Major Decl.) ¶ 1; ECF No 57-3 at 30 (Kyte

Decl.) ¶ 1; ECF No. 57-3 at 40 (Matteson Decl.) ¶ 1; ECF No. 57-3 at 72 (Lozano Decl.) ¶ 1.

On September 22, 2013, plaintiff was entering the chapel when he was called out of line

for a random clothed body search by defendant Martinez.  DSUF ¶ 2; Response to DSUF[3] ¶ 2.[4]

Martinez asked plaintiff to spread his legs and plaintiff complied.  DSUF ¶ 2; Response to DSUF

---

[2]  Located at pages 43-45 of ECF No. 56.
[3]  Located at pages 86-92 of ECF No. 60.
[4]  In responding to DSUF ¶ 2, plaintiff has altered its text and stated that it is disputed because he
almost fell.  Because the unaltered portions of DSUF ¶ 2 are in line with the allegations of the
complaint (ECF No. 1 at 3) and plaintiff has not raised any dispute as to those portions, they will
be deemed admitted.  The court will construe the alterations to DSUF ¶ 2 as disputes to those
portions of the statement.

¶ 2.  Martinez then asked plaintiff to spread his legs wider.  DSUF ¶ 2; Response to DSUF ¶ 2.

At this point, plaintiff claims that defendant Martinez kicked him in the right ankle.  ECF 1 at 3;

Response to DSUF ¶¶ 2-3.  Martinez denies that she kicked plaintiff, but admits that she placed

her foot between plaintiff's legs and put pressure on his right foot to indicate he should move his

foot over further.  DSUF ¶¶ 2-3.  Plaintiff did not say anything to Martinez in response to her

conduct.  DSUF ¶ 4; Response to DSUF ¶ 4.[5]

The same day, plaintiff submitted a health care request form claiming that he had

"throb[b]ing pain in R ankle after being kicked in it by c/o Martinez while being searched going

into chapel."  ECF No. 60 at 30.  On September 24, 2013, he was seen by a registered nurse, RN

Morales, regarding the health care request.  Id.; PSUF ¶ 12; Response to PSUF (ECF No. 59) ¶

12.  The nurse recorded that plaintiff reported his pain level at 5/10 and observed that plaintiff

"walked with a slow steady gait, slight limp."  ECF No. 60 at 30-31; PSUF ¶ 12; Response to

PSUF ¶ 12.  In 2011, before this incident, plaintiff had surgery to remove bone spurs from his

right ankle.  DSUF ¶ 7; Response to DSUF ¶ 7.  After his surgery and prior to the incident with

Martinez, plaintiff experienced chronic, intermittent pain in his right ankle due to the bone spurs

and arthritis, but the pain occurred only during inclement weather.[6]  ECF No. 60 at 60 (Depo

transcript 14:6-16:17).

Plaintiff also submitted an inmate grievance against Martinez which was dated September

22, 2013, and processed on September 25, 2013.[7]  ECF No. 57-3 at 16, 18; DSUF ¶ 8; Response

to DSUF ¶ 8.

////

---

[5]  Plaintiff disputes DSUF ¶ 4 on the ground that he almost fell.  However, he does not deny that he did not say anything to Martinez at the time of the incident and DSUF ¶ 4 is supported by plaintiff's deposition testimony (ECF No. 60 at 59 (Depo transcript 11:14-16)).  Therefore this portion of DSUF ¶ 4 is deemed admitted.

[6]  Defendants' characterization of plaintiff's pain fails to mention its intermittent nature, creating the implication that plaintiff's pain was constant.  DSUF ¶ 7.  Accordingly, the court relies upon plaintiff's deposition testimony, which defendants cite in support of DSUF ¶ 7.

[7]  Although the parties agree the appeal was not processed until September 25, 2013, it appears from the date stamp that it was actually received by the CSP-Solano appeals office on September 24, 2013.  ECF No. 57-3 at 16, 18.

On September 25, 2013, defendant Major completed a CDC 114-D Administrative Segregation Unit Placement Notice advising plaintiff that he was being placed in administrative segregation.  DSUF ¶ 9; PSUF ¶ 7.  Under reasons for placement, the boxes for "presents an immediate threat to the safety of self or others," "jeopardizes integrity of an investigation of alleged serious misconduct or criminal activity," and "endangers institution security" were checked.  ECF No. 57-3 at 26.  The description of the circumstances supporting the placement stated that "on September 22, 2013, you submitted a 602 form alleging Correctional Officer M. Martinez utilized unnecessary force on you while she was conducted [sic] a clothed body search of your person.  You will remain in ASU pending investigation."  Id.  The placement notice documented that plaintiff was not retained in administrative segregation for disciplinary reasons.  Id.  The bottom portion of the notice, which was completed by non-defendant Capt. Mitchell, states that a decision had been made to retain him in administrative segregation "pending completion [of] investigation into excessive UOF."  Id.

Pursuant to the California Code of Regulations, an inmate "shall be immediately removed from the [general population] and placed in administrative segregation" when his presence in the general population "presents an immediate threat to the safety of the inmate or others, endangers institutional security or jeopardizes the integrity of an investigation."  Cal. Code Regs. tit. 15, § 3335.  The parties dispute whether § 3335 required plaintiff to be placed in administrative segregation and whether it was the basis for his placement.  DSUF ¶¶ 10-11; Response to DSUF ¶¶ 10-11.

On October 2, 2013, plaintiff was taken to an Institutional Classification Committee (ICC) meeting regarding his placement in administrative segregation.  DSUF ¶ 12; Response to DSUF ¶ 12.  Defendants Matteson and Kyte were present as committee members during the ICC hearing.  DSUF ¶ 12; PSUF ¶ 11.  Defendants Major and Lozano were not present at the ICC hearing.  ECF No. 57-3 at 45.  The ICC decided to retain plaintiff in administrative segregation and recommended a 60-day extension of his placement.  DSUF ¶ 12; PSUF ¶ 11.  According to the report, petitioner was initially placed into administrative segregation "due to Pending [sic] investigation into unnecessary force utilized by C/O M. Martinez" and that he would be "retained

8

1   in ASU pending Facility investigation." ECF No. 57-3 at 35. The report further states that he

2   was placed in administrative segregation "to protect the integrity of an investigation into possible

3   staff misconduct" and specifically identifies the excessive force alleged in his appeal. Id.

4            On October 14, 2013, plaintiff filed another inmate appeal, this time stating that he had

5   been placed in administrative segregation because of the staff complaint he filed regarding

6   Martinez. DSUF ¶ 16; PSUF ¶ 5.

7            On October 21, 2013, Martinez wrote a "General Chrono" requesting that plaintiff not be

8   released back to the general population at CSP-Solano and that he be transferred to another

9   institution. DSUF ¶ 17; Response to DSUF ¶ 17. The chrono stated that

10                       [i]f Inmate Mason is released back to the general population at
                         CSP-Solano, I feel Inmate Mason would attempt to manipulate this
11                       writer, by making other false statements against me, in an attempt
                         to prevent me from conducting my job duties as a Correctional
12                       Officer. Additionally, I feel he would also attempt to manipulate
                         other Staff Members in the same manner, which would jeopardize
13                       the Safety and security of the institution, staff, and inmates.

14   ECF No. 57-3 at 63.

15            On November 5, 2013, plaintiff was issued another Administrative Segregation Unit

16   Placement Notice retaining him in administrative segregation based on the information in

17   Martinez's general chrono. DSUF ¶ 18; Response to DSUF ¶ 18. According to the placement

18   notice, plaintiff was retained in administrative segregation "due to Correctional Officer M.

19   Martinez's concerns for staff safety" and that he was initially placed in administrative segregation

20   "pending an investigation into allegations Officer Martinez utilized unnecessary force." ECF No.

21   57-3 at 37. Under reasons for placement, the boxes for "presents an immediate threat to the

22   safety of self or others" and "endangers institution security" were checked. Id. The bottom

23   portion, which was completed by defendant Kyte, states that the placement was not for

24   disciplinary reasons and that he would be "retain[ed] pending ICC review and TX consideration."

25   Id.

26            On November 12, 2013, defendant Lozano reviewed and signed the second-level response

27   to plaintiff's first grievance. ECF No. 57-3 at 17, 49-50. The response stated that the inquiry

28   found that Martinez "did not violate CDCR policy with respect to one or more of the issues

9

1    appealed.  Appellant has failed to provide compelling evidence of staff misconduct."  Id. at 49.

2           On November 13, 2013, plaintiff attended an ICC hearing to review his continued

3    retention in administrative segregation.  DSUF ¶ 19; Response to DSUF ¶ 19.  Defendants

4    Lozano, Major, Kyte, and Matteson were present during the meeting as members of the ICC.

5    DSUF ¶ 19; Response to DSUF ¶ 19.  The ICC report noted that plaintiff was last seen on

6    October 2, 2013, and had been "retained pending investigation into possible staff misconduct.

7    ECF No. 57-3 at 47.  It went on to state that plaintiff's allegations regarding Martinez's conduct

8    were "reviewed through the Administrative review process and the allegations are

9    unsubstantiated."  Id.  The report stated that plaintiff had received another placement notice as a

10   result of Martinez's safety concerns and that Martinez had requested that he be transferred to

11   another institution.  Id.  The ICC determined that plaintiff should be retained in administrative

12   segregation and recommended a non-adverse transfer to another institution.  Id.  At the time of

13   the ICC hearing, Major, Kyte, Matteson, and Lozano were unaware that plaintiff had filed an

14   administrative appeal challenging his placement in administrative segregation.  DSUF ¶ 22.[8]

15          On December 6, 2013, appeals coordinator V. Estrella interviewed plaintiff regarding his

16   inmate appeal about his placement in administrative segregation.  DSUF ¶ 16; Response to DSUF

17   ¶ 16.  Plaintiff's appeal was subsequently denied on December 9, 2013, by Lozano acting on

18   behalf of Warden Arnold.  DSUF ¶ 16; PSUF ¶ 10; ECF No. 57-3 at 56, 59-61.  Estrella did not

19   routinely contact or interview ICC members when responding to appeals such as the one

20   submitted by plaintiff and if she had contacted any ICC members, it would have been

21   documented in the response, which does not indicate that anyone other than plaintiff was

22   contacted regarding the appeal.  ECF No. 57-3 at 53 (Estrella Decl.) ¶ 6.

23   _____

24   [8]  Plaintiff states that he has no knowledge whether the defendants knew that he filed an
     administrative appeal regarding his placement in administrative segregation.  Response to DSUF

25   ¶ 22.  "[F]ailure to remember and lack of knowledge are not sufficient to create a genuine
     dispute."  Fed. Election Comm'n v. Toledano, 317 F.3d 939, 950 (9th Cir. 2002) (holding that

26   "[t]he district court was entitled to treat [facts challenged on these grounds] as established for
     purposes of summary judgment").  Plaintiff has provided no evidence to contradict defendants'

27   assertion they were unaware of plaintiff's appeal.  Therefore, plaintiff's objection is overruled and
     DSUF ¶ 22 is deemed admitted.

28

1    VI.    Discussion

2           A.   Excessive Force Claim

3           "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

4    restraints on prison officials, who may not . . . use excessive physical force against prisoners."

5    Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).

6    "[W]henever prison officials stand accused of using excessive physical force in violation of the

7    [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

8    effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson,

9    503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

10          When determining whether the force was excessive, the court looks to "the extent of

11   injury suffered by an inmate . . . , the need for application of force, the relationship between that

12   need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

13   and 'any efforts made to temper the severity of a forceful response.'"  Id. at 7 (quoting Whitley,

14   475 U.S. at 321).  The extent of injury suffered by the plaintiff may indicate the amount of force

15   applied.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

16          While de minimis uses of physical force generally do not implicate the Eighth

17   Amendment, significant injury need not be evident, because "[w]hen prison officials maliciously

18   and sadistically use force to cause harm, contemporary standards of decency always are violated."

19   Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327).

20

21                  [However,] not every malevolent touch by a prison guard gives rise
                    to a federal cause of action.  The Eighth Amendment's prohibition
22                  of 'cruel and unusual' punishments necessarily excludes from
                    constitutional recognition *de minimis* uses of physical force,
23                  provided that the use of force is not of a sort repugnant to the
                    conscience of mankind.  An inmate who complains of a 'push or
24                  shove' that causes no discernible injury almost certainly fails to
                    state a valid excessive force claim.  Injury and force, however, are
25                  only imperfectly correlated, and it is the latter that ultimately
                    counts."

26   Wilkins, 559 U.S. at 37-38 (internal citations and some internal quotation marks omitted).

27          Excessive force cases often turn on credibility determinations, and "'[the excessive force

28   inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw

11

inferences therefrom.'"  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  Therefore, "'summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  Id. (quoting Santos, 287 F.3d at 853).  The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."  Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

### 1. Injury Suffered by Plaintiff

The nature and extent of plaintiff's injury, while not dispositive, must be considered in determining whether the evidence supports a reasonable inference that defendants' alleged use of force was motivated by malicious or sadistic intent.  Hudson, 503 U.S. at 7.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.  "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  Hudson, 503 U.S. at 7.

Plaintiff alleges that he was kicked in the right ankle by Martinez during a clothed body search on September 22, 2013, and afterwards began experiencing dull pain and swelling in his ankle.  ECF No. 1 at 3-4.  He submitted a health care request the same day and was seen by RN Morales two days later on September 24, 2013.  ECF No. 60 at 30; PSUF ¶ 12; DSUF ¶ 6.  At the appointment, RN Morales observed that plaintiff "walked with a slow steady gait, slight limp" and reported his pain level was 5/10.  ECF No. 60 at 30; PSUF ¶ 12; Response to PSUF ¶ 12.

Defendants argue that plaintiff does not have any ongoing injuries as a result of the incident (ECF No. 57-1 at 6), but an injury does not have to be permanent to be indicative of excessive force.   They also allege that plaintiff did not seek medical attention until two days after the incident.  Id.  However, this assertion is directly contradicted by the record which shows that plaintiff requested medical attention on the same day as the incident; he just was not seen until two days later.  ECF No. 60 at 30.  As an inmate, plaintiff was not able to go and see a doctor whenever he wanted, and the record shows that he promptly took action to secure medical attention.  Defendants further argue that plaintiff did not complain of any pain or react at the time

1   of the incident and imply that any pain plaintiff experienced in his right ankle was due to his

2   previous surgery and arthritis, not the incident with Martinez.  ECF No. 57-1 at 6.  However,

3   plaintiff alleged in his verified complaint that he experienced pain and observed swelling as soon

4   as he returned to his cell after the incident, not that he experienced it immediately.  ECF No. 1 at

5   3-4.  Plaintiff has personal knowledge of his visible and non-visible injuries and the medical

6   records support his allegations.  Moreover, the evidence shows that plaintiff was not in any pain

7   prior to the incident with Martinez and that at the time of the encounter, his chronic pain only

8   occurred when there was inclement weather.  ECF No. 60 at 60 (Depo transcript 15:7-16:8).

9   There is no evidence that weather was a factor at the time of the incident.  Accordingly, Martinez

10  cannot prevail simply on the theory that plaintiff's injury was de minimis or non-existent.

11          Taken in the light most favorable to plaintiff, the evidence shows that he suffered injuries

12  that would support his claim that Martinez used force against him.  Even taking the evidence in

13  the light most favorable to defendants, the court finds that this factor weighs in plaintiff's favor.

14          2.  Malicious and Sadistic Force

15          In determining whether there has been an Eighth Amendment violation, the standard is

16  "malicious and sadistic force, not merely objectively unreasonable force."  Clement v. Gomez,

17  298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (not every malevolent touch gives rise

18  to an Eighth Amendment claim).  Rather, "[t]he Eight Amendment's prohibition of cruel and

19  unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of

20  physical force, provided that the use of force is not of a sort repugnant to the conscience of

21  mankind."  Hudson, 503 U.S. at 9-10 (quoting Whitley, 475 U.S. at 327) (internal quotation

22  marks omitted).

23          According to both parties, plaintiff was complying with Martinez's verbal commands.

24  DSUF ¶ 2; ECF No. 1 at 3.  Under plaintiff's version of events, Martinez kicked him in the ankle

25  so he would spread his legs wider.  PSUF ¶ 4.  However, defendants do not allege that Martinez

26  had any reason to suspect that plaintiff would not continue to comply with her verbal commands

27  or that he posed any threat.  Accordingly, a jury could reasonably find that Martinez's conduct

28  was unnecessary and thus "excessive" in light of plaintiff's compliance.

13

1    However, a finding that Martinez used unreasonable force is insufficient to state a claim

2    under the Eighth Amendment.  To survive summary judgment, plaintiff must demonstrate that

3    Martinez's conduct was malicious and sadistic *for the purpose of causing harm*.  Hudson, 503

4    U.S. at 7.  Even under plaintiff's version of facts, Martinez kicked him in the ankle in an effort to

5    complete the body search.  Martinez then performed the body search on plaintiff and let him

6    return to the line.  Response to DSUF ¶ 2.  Based on plaintiff's version of facts, Martinez's use of

7    force was certainly unreasonable.  However, plaintiff fails to demonstrate that Martinez had

8    malicious intent, which "necessarily involves a more culpable mental state than that required for

9    excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction."

10   Clement, 298 F.3d at 903 (citing Graham v. O'Connor, 490 U.S. 386, 398 (1989)).  Even if

11   plaintiff's allegation that Martinez kicked him in the ankle is true, this allegation alone does not

12   lead to the inference that Martinez's conduct was malicious and sadistic for the very purpose of

13   causing harm.  Plaintiff has presented no circumstantial evidence that would support an inference

14   Martinez acted for the purpose of causing him physical harm.  Under either party's version of the

15   facts, Martinez's conduct was for the purpose of effectively conducting the body search, and a

16   jury would be unable to find that it was motivated by malicious or sadistic intent, as required by

17   the Eighth Amendment.

18         3. Conclusion

19   For the reasons set forth above, the court finds that plaintiff fails to state a claim that

20   Martinez's conduct violated his Eighth Amendment rights.  Summary judgment on plaintiff's

21   Eighth Amendment claim should therefore be granted for defendants and denied for plaintiff.

22      B. Retaliation Claim

23   "Within the prison context, a viable claim of First Amendment retaliation entails five

24   basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

25   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

26   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

27   correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote and

28   citations omitted).

1    Under the first element, plaintiff need not prove that the alleged retaliatory action, in

2    itself, violated a constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a

3    retaliation claim, plaintiff need not "establish an independent constitutional interest" was

4    violated); see also Hines v. Gomez, 108 F.3d 265, 269 (9th Cir.1997) ("[P]risoners may still base

5    retaliation claims on harms that would not raise due process concerns."); Rizzo v. Dawson, 778

6    F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action

7    for purposes of retaliation claim).  The interest cognizable in a retaliation claim is the right to be

8    free of conditions that would not have been imposed but for the alleged retaliatory motive.

9    However, not every allegedly adverse action is sufficient to support a claim for retaliation under

10   § 1983.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than

11   minimal" (quoting Rhodes, 408 F.3d at 568 n.11)); Bell v. Johnson, 308 F.3d 594, 603 (6th Cir.

12   2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally

13   cognizable injuries." (citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999))).

14   To prove the second element, retaliatory motive, plaintiff must show that his protected

15   activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct."

16   Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (some internal quotation marks omitted)

17   (quoting Soranno's Gasco, Inc v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).  Plaintiff must

18   provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere

19   speculation is not sufficient.  McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882

20   (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)); Wood v. Yordy,

21   753 F. 3d 899, 905 (9th Cir. 2014) (citations omitted).  In addition to demonstrating defendant's

22   knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include:  (1)

23   proximity in time between the protected conduct and the alleged retaliation; (2) defendant's

24   expressed opposition to the protected conduct; or (3) other evidence showing that defendant's

25   reasons for the challenged action were false or pretextual.  McCollum, 647 F.3d at 882 (quoting

26   Allen, 283 F.3d at 1077).

27   The third element includes prisoners' First Amendment right to access to the courts.

28   Lewis v. Casey, 518 U.S. 343, 346 (1996).  While prisoners have no freestanding right to a prison

1    grievance process, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's

2    fundamental right of access to the courts hinges on his ability to access the prison grievance

3    system," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by

4    Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and

5    initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate

6    against prisoners for engaging in these activities.  Rhodes, 408 F.3d at 567.

7          Under the fourth element, plaintiff need not demonstrate a "*total* chilling of his First

8    Amendment rights," only that defendant's challenged conduct "would chill *or* silence a person of

9    ordinary firmness from future First Amendment activities."  Rhodes, 408 F.3d at 568-69

10   (emphasis in original, citation and internal quotation marks omitted).  Moreover, direct and

11   tangible harm will support a retaliation claim even without demonstration of a chilling effect on

12   the further exercise of a prisoner's First Amendment rights.  Id. at 567 n.11.  "[A] plaintiff who

13   fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as

14   a retaliatory adverse action.  Brodheim, 584 F.3d at 1269 (citing Rhodes, 408 F.3d at 567 n.11).

15         Regarding the fifth element, the Ninth Circuit has held that preserving institutional order,

16   discipline, and security are legitimate penological goals that, if they provide the motivation for an

17   official act taken, will defeat a claim of retaliation.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.

18   1994) (citing Rizzo, 778 F.2d at 532).  When considering this final factor, courts should "'afford

19   appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

20   penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (quoting Sandin

21   v. Conner, 515 U.S. 472, 482 (1995)).  Plaintiff bears the burden of pleading and proving the

22   absence of legitimate correctional goals for defendant's challenged conduct.  Pratt, 65 F.3d at

23   806.

24         Defendants argue that plaintiff's retaliation claim must be dismissed because plaintiff was

25   placed in administrative segregation pursuant to the regulations and for legitimate penological

26   purposes.  ECF No. 57-1 at 7-8; ECF No. 58 at 3.  Plaintiff argues that defendants Major, Lozano,

27   Kyte, and Matteson placed him in administrative segregation, and subsequently ordered his

28   transfer to another institution, as retaliation for filing the staff complaint against Martinez, as well

as grievances regarding his placement in administrative segregation.  ECF No. 56 at 6-7; ECF No. 60 at 9-14.  He further alleges that these defendants also kept him in administrative segregation and transferred him because of Martinez's general chrono, which she wrote because she knew that it would cause plaintiff to be retaliated against by her supervisors.  ECF No. 56 at 5; ECF No. 60 at 8.

### 1.  Adverse Action and Chilling Effect

To state a cognizable retaliation claim, a prisoner must show that a state actor took some adverse action against him.  Rhodes, 408 F.3d at 567.  In this case, plaintiff was placed in administrative segregation and subsequently transferred to another institution.  The Ninth Circuit has established that placement in administrative segregation constitutes adverse action for purposes of retaliation.  Shepard v. Quillen, 840 F.3d 686, 688 (9th Cir. 2016) (noting there was no dispute that the prisoner's placement in administrative segregation was an adverse action); Watison v. Carter, 668 F.3d 1108, 1115 (9th Cir. 2012) (holding that placing a prisoner in administrative segregation constitutes adverse action).  Similarly, the courts have also held that transfer to another prison constitutes adverse action.  Rizzo, 778 F.2d at 531-32 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim); Brodheim, 584 F.3d at 1270 (mere threat of transferring an inmate to a different prison may constitute adverse action).

To show a chilling effect, a plaintiff does not have to show that his speech was actually inhibited, "but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'"  Brodheim, 584 F.3d at 1271 (quoting Rhodes, 408 F.3d at 568-69).  Direct and tangible harm will support a retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights.  Id. at 1270 (quoting Rhodes, 408 F.3d at 567 n.11).  For an inmate to show a chilling effect through direct and tangible harm, the harm need only be more than minimal, Watison, 668 F.3d at 1114 (citations omitted), and the Ninth Circuit has held that placement in administrative segregation is "significantly more than minimal" and therefore sufficient to constitute a chilling effect, Shepard, 840 F.3d at 691 (concluding that a jury could find that the threat of administrative

17

segregation would chill a person of ordinary firmness from complaining about officer misconduct).

Accordingly, plaintiff's placement in administrative segregation and transfer satisfy both the adverse action and chilling effect prongs of the test.

2. Retaliatory Motive

Plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendants' challenged conduct. Brodheim, 584 F.3d at 1271. Retaliation is actionable even if the act, taken for a different reason would have been proper. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). However, the defendant may prevail if he shows that he would have reached the same decision absent the protected conduct. Id. at 287.

Plaintiff alleges that after he filed the complaint against Martinez, Major placed him in administrative segregation on September 25, 2013 in retaliation for filing the complaint. ECF No. 1 at 4. Then, at the October 2, 2013 ICC hearing on his placement, Kyte, Lozano, Major, and Matteson chose to retain him in administrative segregation, also in retaliation for filing the staff complaint against Martinez. Id. at 5. Plaintiff subsequently received another administrative segregation placement notice on November 5, 2013, which was partially completed by Kyte and based on safety concerns voiced by Martinez. Id.; ECF No. 57-3 at 37. At plaintiff's second committee hearing on November 13, 2013, Kyte, Lozano, Major, and Matteson chose to retain him in administrative segregation and recommended that he be transferred to another facility. ECF No. 1 at 5-6; ECF No. 57-3 at 28. He claims that the second placement notice and the results of the second hearing were due to defendants retaliating against him for filing a complaint about his first placement notice and hearing. ECF No. 1 at 5-6.

As an initial matter, the record shows that contrary to what plaintiff appears to claim in the complaint, defendants Major and Lozano were not part of the committee that decided to retain him in administrative segregation on October 2, 2013. ECF No. 57-3 at 35. Therefore, with respect to the September 25, 2013 placement, plaintiff's retaliation claim against Major is limited to the initial placement in administrative segregation. As for Lozano, he signed the second-level

18

response to plaintiff's appeal challenging the September 25, 2013 placement and subsequent

retention.  Id. at 59-61.  That appeal was denied.  Id.  Accordingly, any retaliation claim against

Lozano related to the initial retention in administrative segregation is limited to his denial of the

appeal challenging the retention.

In response to plaintiff's allegations, defendants argue that plaintiff's September 25, 2013

placement in administrative segregation and the October 2, 2013 decision to retain him therein

were required by California Code of Regulations, title 15, § 3335 in order to protect plaintiff's

safety and the integrity of the investigation into the staff complaint against Martinez.  ECF No.

57-1 at 7.  Section 3335 states that

> [w]hen an inmate's presence in an institution's General Population
> (GP) presents an immediate threat to the safety of the inmate or
> others, endangers institutional security or jeopardizes the integrity
> of an investigation of an alleged serious misconduct, criminal
> activity, or the safety of any person, the inmate shall be
> immediately removed from the GP and placed in administrative
> segregation.

Cal. Code Regs. tit. 15, § 3335.  However, as the Ninth Circuit recently pointed out in Shepard,

supra, "section 3335 says nothing about reports of staff misconduct."  840 F.3d at 689.  In fact,

"[t]he regulation lists [only] three predicates that, if met, require placing an inmate in

administrative segregation: threat to safety, endangering institutional security and jeopardizing

the integrity of an investigation."  Id. (citing Cal. Code Regs. tit. 15, § 3335(a)).

In Shepard, the plaintiff was placed into administrative segregation after filing a complaint

alleging that an officer had "roughed him up during [an] escort."  Id. at 688.  The defendant

argued that § 3335 was nondiscretionary and therefore inmates who allege serious staff

misconduct must be placed in administrative segregation.  Id. at 689.  The Ninth Circuit

summarized the defendant's argument as follows: "An allegation of serious officer misconduct

triggers an investigation.  An inmate's presence in the general population will jeopardize that

investigation.  Therefore, [defendant] didn't place [plaintiff] in administrative segregation

because of any protected conduct.  He did it to comply with the regulation."  Id.  The court was

unconvinced and went on to state that

////

> [a]n allegation of serious staff misconduct *could* trigger one of these predicates, but nowhere does the regulation direct prison officials to place *all* inmates who complain about mistreatment in administrative segregation.   When an inmate complains of staff misconduct, the official must determine whether leaving the inmate in the general population will create safety, security or investigation-related concerns.

Id. (emphasis added).   The Ninth Circuit ultimately held that there were issues of fact as to whether the defendant's reliance on § 3335 was genuine or pretextual and remanded the case to the district court.   Id. at 690-91.

There are a number of similarities between the facts in this case and those in Shepard. Plaintiff, like Shepard, was placed into administrative segregation after filing a complaint alleging that a staff member used excessive force against him.   With respect to the September 25, 2013 placement and October 2, 2013 retention in administrative segregation, defendants here, as in Shepard, claim that the decisions to place and retain plaintiff in administrative segregation were nondiscretionary.   ECF No. 57-1 at 7-8.   However, they similarly provide only the general justifications that an allegation of serious staff misconduct requires administrative segregation placement to protect inmate and institutional safety and the integrity of the investigation.   ECF No. 57-3 at 22 (Major Decl.) ¶¶ 4, 7; ECF No 57-3 at 31-32 (Kyte Decl.) ¶¶ 4, 7; ECF No. 57-3 at 41 (Matteson Decl.) ¶¶ 4, 7.   There is no specific evidence that these were valid concerns in plaintiff's case.   Defendants have also failed to provide sufficient evidence for this court to "conclude whether officers automatically apply the regulation to all inmates who allege serious staff misconduct."[9]   Shepard, 840 F.3d at 692.   As was the Ninth Circuit in Shepard, the undersigned is unable to find that § 3335 mandated plaintiff's placement in administrative segregation in this case.   However, defendants' failure to show that § 3335 was in fact mandatory does not end the discussion because plaintiff must still provide evidence that the decision to place and retain him in administration was based on retaliatory animus.

---

[9]   In finding a lack of evidence to support the existence of such a policy in Shepard, the Ninth Circuit commented that "we seriously doubt that such a policy, if it in fact exists, would withstand constitutional scrutiny."   840 F.3d at 692.

1    Despite the similarities between this case and Shepard, there are also material differences.

2    Like the defendant in Shepard, the defendants here provide evidence that it was their belief that

3    they were required to place plaintiff in administrative segregation because of the nature of the

4    allegations he made against Martinez and their evidence is limited to their own declarations.  ECF

5    No. 57-3 at 22 (Major Decl.) ¶¶ 4, 7; ECF No 57-3 at 31-32 (Kyte Decl.) ¶¶ 4, 7; ECF No. 57-3 at

6    41 (Matteson Decl.) ¶¶ 4, 7; Shepard, 840 F.3d at 689-90 (defendant's own declaration was only

7    evidence that prison officials treat § 3335 as nondiscretionary when an inmate claims excessive

8    use of force or that, at a minimum, defendant believed it to be nondiscretionary).  But unlike the

9    plaintiff in Shepard, plaintiff here offers no evidence that would contradict defendants' stated

10   motives.  Id.

11       In Shepard, the plaintiff alleged that after he verbally complained about the use of

12   excessive force, the defendant "offered to 'maybe . . . work something out' and suggested

13   Shepard recant his statement against [the officer]."  840 F.3d at 688.  Shepard further claimed that

14   when he persisted, the defendant told him that he "would be placed in administrative segregation

15   for reporting [the officer]" and that when he followed through with filing a complaint he was

16   placed in administrative segregation the same day.  Id.  Plaintiff here has made no allegations that

17   any of the defendants made comments that would indicate their decisions were based on a desire

18   to retaliate against him for filing a complaint against Martinez.  ECF No. 1 at 4-6; ECF No. 57-3

19   at 55-58 (inmate grievance); ECF No. 60 at 5, 8-12.

20       There were also discrepancies in the documentation in Shepard that do not exist here.  The

21   Ninth Circuit found that only two of the four reasons marked on Shepard's administrative

22   segregation placement notice were consistent with the defendant's story on appeal, and the

23   placement notice indicated that plaintiff was being sent to administrative segregation for

24   disciplinary reasons.  Shepard, 840 F.3d at 690.  Here, the documentation for the placement

25   notice and ICC hearing show that plaintiff's placement was non-disciplinary,[10] are internally

26   _____

27   [10]  Although the classification chrono does not explicitly state that plaintiff's placement was non-disciplinary, it reflects that he was placed in work group D1/D, which is a non-disciplinary status.  Compare Cal. Code Regs. tit. 15, § 3044(b)(6) (2013), with id., § 3044(b)(7).  Plaintiff argues that

28   (continued)

1    consistent, and are consistent with the explanation given by defendants in their declarations.

2    Although there is no specific evidence that defendants' concerns of witness tampering and

3    negative interactions between plaintiff and Martinez were warranted at this stage, neither is there

4    evidence to contradict defendants' claims that their decisions were based upon these general

5    principles of correctional safety.

6         With respect to Lozano's denial of plaintiff's grievance alleging he was being improperly

7    held in administrative segregation, plaintiff has also failed to establish any retaliatory motivation.

8    The record shows that the response to the appeal was drafted by appeals coordinator Estrella, and

9    there is no evidence that Lozano deviated from Estrella's recommended response or to support an

10   inference that the denial was in retaliation for filing appeals.

11        Plaintiff unsuccessfully attempts to create issues of fact relating to his initial placement

12   and retention in administrative segregation by claiming defendants violated policy.  He argues

13   that the failure to follow department policy with respect to excessive force claims and to

14   interview his witnesses is evidence of retaliatory motive.  ECF No. 56 at 7-8; ECF No. 60 at 9-12.

15   However, beyond the allegation that Major interviewed him on September 24, 2013, plaintiff

16   offers no evidence that any of the defendants were involved with, or responsible for, the

17   investigation into the alleged excessive use of force.  Id.  In fact, he specifically identifies Lt. Lee,

18   a non-defendant, as the officer responsible for the investigation and interviewing witnesses.  ECF

19   No. 60 at 9-10; ECF No. 60 at 63 (Depo transcript 26:21-25).

20        As for the alleged interview by Major on September 24, 2013, although this creates a

21   dispute as to what date Major became aware of plaintiff's allegations,[11] the dispute is not

22   material, nor does it establish retaliatory motive.  Plaintiff has never alleged that Major threatened

23   to put him in administrative segregation if he filed a staff complaint, and in fact states that

24   defendant Major "requested that [he] write out, again, what happened on the day of September

25   22, 2013, give it to [plaintiff's] building officer, Stott, and have him bring it back to him (Lt.

26   ─────────────────────────────────────────────
     he was initially placed on disciplinary status, but fails to point to any evidence of this.

27   [11]  Major states he did not become aware of the allegations of excessive force until September 25,
     2013.  ECF No. 57-3 at 22 (Major Decl.) ¶ 5.

28

1   Major).” Id. at 54.  Plaintiff’s declaration indicates that Major was aware of plaintiff’s staff

2   complaint and that rather expressing opposition to plaintiff’s protected conduct, he was

3   encouraging plaintiff to make sure the incident was properly documented and reported.  Id.

4          Although the court is troubled by allegations that the procedures for documenting an

5   investigation into an alleged use of excessive force were not followed, especially the apparent

6   loss of the recording of plaintiff’s interview by Major, plaintiff fails to show who was responsible

7   for these failures.  In any event, they do not establish retaliatory motive.  Plaintiff’s reliance on

8   Cornell v. Woods, 69 F.3d 1383 (8th Cir. 1995), on this point is misplaced.  In Cornell, the

9   Eighth Circuit did find that the failure to follow procedures supported a finding of retaliatory

10  motive.  Id. at 1388-89.  However, the facts in Cornell are easily distinguishable from the facts at

11  hand.

12         The plaintiff in Cornell was promised immunity from discipline if he cooperated in the

13  investigation of an officer charged with violating multiple rules related to transactions between

14  officers and inmates and their families.  Id. at 1386.  Based on information from the plaintiff

15  regarding an agreement they made, the officer was investigated and ultimately forced to resign.

16  Id.  The defendant in Cornell was the officer’s union steward and was made aware of the

17  plaintiff’s participation through the investigation.  Id.  After the offending officer was forced to

18  resign, the defendant issued the plaintiff a disciplinary report for violating the rule banning

19  contracts between inmates and employees.  Id.  The report was issued outside the permissible

20  timeframe for issuing disciplinary reports and despite confirmation that the plaintiff had been

21  promised immunity.  Id. at 1388.  Upon issuance of the disciplinary report, the plaintiff was

22  immediately transferred to a maximum security facility, which violated the guideline that inmates

23  were normally to remain in their current housing assignment pending resolution of the

24  disciplinary.  Id.  Though prison officials claimed the transfer was to facilitate the investigation, it

25  was determined that no investigation took place after the transfer.  Id.  The failure to follow

26  policies in Cornell clearly supported an inference of retaliatory motive because the issuance of the

27  disciplinary outside the appropriate timeframe indicated the only reason for its issuance was the

28  officer’s forced resignation and the unusual, immediate transfer of plaintiff to a maximum

23

1  security facility implied that he was being punished for his role in the officer's termination.  The

2  alleged policy violations in this case do not appear to have anything to do with plaintiff's

3  placement in administrative segregation or transfer to another prison.

4        Regarding the second decision to place and retain plaintiff in administrative segregation,

5  plaintiff has also failed to raise a triable issue of fact regarding retaliatory motivation.  As with

6  the original ad seg placement and retention, the documentation for the second placement and

7  retention is internally consistent, consistent with defendants' explanations in their declarations,

8  and shows the placement was non-disciplinary.  With respect to the November 5, 2013 placement

9  notice, although Kyte reviewed the placement notice with plaintiff, it was initiated by Lt.

10  Richardson, who is not a defendant.  ECF No. 57-3 at 37.  There is no evidence that Major, Kyte,

11  Matteson, and Lozano prompted Richardson to initiate the administrative segregation placement.

12  Moreover, the notice says that the placement was due to the safety concerns articulated by

13  Martinez.  Id.  Even if Martinez's general chrono was baseless and drafted in an effort to prompt

14  action by the other defendants,[12] as plaintiff argues, there is no evidence that Kyte, in

15  recommending retention in administrative segregation pending ICC review and transfer

16  consideration, had reason to believe the allegations were fabricated.  Moreover, as defendants

17  point out, even if plaintiff was not a threat, the fact that Martinez felt the need to draft the chrono

18  showed that there was, at least on her part, "tension and discord" between them.  DSUF ¶ 21.

19        As for the November 13, 2013 ICC hearing, defendants aver that at the time of the

20  hearing, they were unaware of the grievance related to plaintiff's placement and retention in

21  administrative segregation.  DSUF ¶ 22.  Plaintiff concedes that he has no personal knowledge of

22  whether defendants were aware of his grievance at the time of the hearing.  Response to DSUF ¶

23  22.  He has also submitted no evidence demonstrating defendants were aware of his placement

24  grievance.  Since defendants were unaware of plaintiff's placement grievance, plaintiff is unable

25  to illustrate that he was retained in administrative segregation based on retaliatory motive for

26

27  [12]  Additionally, if defendants were in fact acting in response to Martinez's chrono, their actions would not be "because of" plaintiff's protected conduct.

28

1  filing a grievance challenging his September 25, 2013 administrative segregation placement and

2  October 2, 2013 ICC hearing.  Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (to raise a

3  triable issue as to motive, plaintiff must offer evidence that defendants knew about the protected

4  conduct).

5          To the extent plaintiff argues that the placement was the result of Martinez's safety

6  chrono, which he claims was fabricated for the purpose of keeping him in administrative

7  segregation, he fails to show that Major, Kyte, Matteson, or Lozano had reason to believe the

8  chrono was fabricated.  Moreover, even if defendants did believe the chrono to be a malicious

9  fabrication, that would only further support their decision to retain plaintiff in administrative

10  segregation and transfer him to another facility, away from a correctional officer who appeared to

11  be targeting him.

12          The only evidence of retaliatory motive that plaintiff presents is the timing of his

13  administrative segregation placements, and that is not sufficient by itself.  Pasion v. Haviland,

14  597 F. App'x 908, 909 (9th Cir. 2014) (timing of administrative segregation placement "would

15  not suffice standing alone to avoid summary judgment" on retaliation claim).  Generally

16  speaking, a retaliation claim cannot rest on "the logical fallacy of *post hoc*, *ergo propter hoc*,

17  literally, 'after this, therefore because of this.'"  Huskey v. City of San Jose, 204 F.3d 893, 899

18  (9th Cir. 2000).  In other words, the fact that adverse action followed protected conduct is not

19  enough to establish retaliatory motive.  Plaintiff must allege specific facts and circumstances that

20  demonstrate the existence of such a motive.  McCollum, 647 F.3d at 882 (when relying on

21  circumstantial evidence to show retaliation, plaintiff must produce specific evidence to defeat

22  summary judgment) (citing Anthoine v. N. Cent. Ctys. Consortium, 605 F.3d 740, 753 (9th Cir.

23  2010)).

24          For these reasons, plaintiff has not shown, either in his motion for summary judgment or

25  in his response to defendants' motion for summary judgment, that the decisions to place and

26  retain him in administrative segregation and to transfer him to another institution were based on

27  retaliatory motive.  Accordingly, he cannot prevail on his retaliation claims against defendants

28  ////

1  Major, Kyte, Matteson, and Lozano and the court need not consider whether there was a valid

2  penological interest for the actions.

3        3.  Conclusion

4        Under either plaintiff or defendants' versions of facts, a jury could not reasonably

5  conclude that plaintiff's placement and retention in administrative segregation or transfer were

6  motivated by retaliation because plaintiff has produced no evidence to suggest that defendants

7  used § 3335 procedures as subterfuge to obscure their retaliatory motivations or that they were

8  aware of the grievance regarding his placement.  Accordingly, defendants' motion for summary

9  judgment on plaintiff's First Amendment claim should be granted.

10       C.  Qualified Immunity

11       Government officials are immune from civil damages "unless their conduct violates

12  'clearly established statutory or constitutional rights of which a reasonable person would have

13  known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457

14  U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the

15  following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff,

16  demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether

17  the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S.

18  194, 201 (2001) overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling

19  Saucier's requirement that the two prongs be decided sequentially).  These questions may be

20  addressed in the order most appropriate to "the circumstances in the particular case at hand."

21  Pearson, 555 U.S. at 236.  Thus, if a court decides that plaintiff's allegations do not support a

22  statutory or constitutional violation, "there is no necessity for further inquiries concerning

23  qualified immunity." Saucier, 533 U.S. at 201.  On the other hand, if a court determines that the

24  right at issue was not clearly established at the time of the defendant's alleged misconduct, the

25  court need not determine whether plaintiff's allegations support a statutory or constitutional

26  violation.  Pearson, 555 U.S. at 236-42.

27       The court has established that, taken in the light most favorable to plaintiff, the allegations

28  fail to demonstrate a violation of plaintiff's Eighth Amendment or First Amendment rights.

1   Therefore, it is unnecessary to reach the qualified immunity issue on these claims and the court

2   declines to do so.

3   VII.   Summary

4           Under both plaintiff's and defendants' version of facts, a jury could not reasonably find

5   that Martinez's conduct constituted excessive force in violation of the Eighth Amendment

6   because plaintiff failed to establish that Martinez's use of force was malicious and sadistic for the

7   purpose of causing harm.  Instead, both plaintiff's and defendants' versions of fact support an

8   inference that Martinez's conduct, although unreasonable in light of  plaintiff's compliance, was

9   for the purpose of effectuating the body search.  Therefore, defendants' motion for summary

10  judgement on the Eighth Amendment claim should be granted.

11          Under both plaintiff's and defendants' version of facts, there is no basis for a finding that

12  plaintiff's placement and retention in administrative segregation and transfer were retaliatory.

13  Plaintiff's allegations are based on assumptions that are not supported by evidence, and the

14  documentation is consistent with defendants' claims that their decisions were based on what they

15  believed were legitimate penological purposes.  Since plaintiff did not demonstrate that

16  defendants' conduct was motivated by retaliation, his motion for summary judgment on the First

17  Amendment claim should be denied and defendants' motion for summary judgment on this issue

18  should be granted.

19  VIII.   Conclusion

20          Since plaintiff has failed to raise triable issues of material fact with respect to both the

21  Eighth and First Amendment claims, defendants' motion for summary judgement should be

22  granted and plaintiff's motion for summary judgement should be denied.

23          Accordingly, IT IS HEREBY RECOMMENDED that:

24          1.  Plaintiff's motion for summary judgment (ECF No. 56) be denied.

25          2.  Defendants' motion for summary judgment (ECF No. 57) be granted.

26          These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty one days

28  after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

3  objections shall be served and filed within fourteen days after service of the objections.  The

4  parties are advised that failure to file objections within the specified time may waive the right to

5  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: March 28, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE